# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Dynamic Air, Inc.,                                       Civil No. 05-955 (DWF/SRN)

        Plaintiff,

v.                                                       **MEMORANDUM**
                                                         **OPINION AND ORDER**
Reichhold, Inc.,

        Defendant;

and

Reichhold, Inc.,

        Counter-Claimant,

v.

Dynamic Air, Inc.,

        Counter-Defendant.

---

Edward F. Fox, Esq., J. Aron Allen, Esq., and Scott J. Hoss, Esq., Bassford Remele, PA; and Erica Gutmann Strohl, Esq., and Lenae M. Pederson, Esq., Meagher & Geer, PLLP, counsel for Plaintiff and Counter-Defendant.

Jay M. Quam, Esq., John E. Drawz, Esq., and Nathan J. Hartshorn, Esq., Fredrikson & Byron, PA, counsel for Defendant and Counter-Claimant.

---

## Introduction

The above-entitled matter came before the undersigned United States District Court Judge

pursuant to a Motion for Partial Summary Judgment brought by Plaintiff Dynamic Air, Inc. ("Dynamic

Air"), and pursuant to a Motion for Summary Judgment brought by Defendant Reichhold, Inc.

("Reichhold").  For the reasons set forth below, Dynamic Air's motion is granted in part and denied in part; Reichhold's motion is denied.

## Background

Dynamic Air designs, manufactures, and sells pneumatic equipment and conveying systems that use pressurized air and other gases to convey materials through closed-pipeline systems in industrial settings.  Reichhold manufactures various polyester resins and other coatings and performance resins. One of Reichhold's manufacturing facilities is located in Morris, Illinois (the "Morris Plant").

In 2003, Reichhold decided to expand the Morris Plant and to automate its system for unloading two of the raw materials used to produce polyester resins:  isophthalic acid ("IPA") and terephthalic acid ("TPA").  As a result, Dynamic Air and Reichhold discussed Reichhold's interest in purchasing one of Dynamic Air's conveying systems to unload these materials.  The parties discussed a pneumatic conveying system that used pressurized nitrogen to convey the materials.

Initially, Daniel Roe, Dynamic Air's Regional Application Engineering Manager, met with Reichhold representatives to discuss the proposed expansion project.  The meeting minutes from this discussion describe that Roe told Reichhold that Dynamic Air would provide "detailed engineering drawings . . . as part of the Dynamic Air engineering package for approval once the project is underway."  (Affidavit of Nathan J. Hartshorn ("Hartshorn Aff.") Ex. B at ¶ 3.13.)

The parties' discussions led to a proposal submitted by Dynamic Air, Dynamic Air Proposal #03-0196E (the "Proposal").  (Affidavit of Erica Gutmann Strohl in Support of Plaintiff's Motion for Partial Summary Judgment ("Strohl Aff.") Ex. A.)  The Proposal stated that it was subject to Dynamic Air's Terms and Conditions #062303.  (*Id*. at 30; Strohl Aff. Ex. B.)  The terms and conditions

2

included the following provisions:

> **WARRANTY**.  For a period of one (1) year from the date of shipment, Seller warrants that the SUPPLY sold by Seller will perform and function within the specifications, conditions and limitations published by Seller in its proposal to Buyer. Seller makes no warranties with respect to any portion of the SUPPLY sold but not manufactured by Seller.
>
> Seller's liability under this Warranty is expressly limited to correction within a reasonable time, using Seller's best efforts, of any defects or errors, which in the judgment of Seller were made by it in the design of the SUPPLY, and to the repair or replacement of any parts of the SUPPLY which are defective in material or workmanship by making available FOB Seller's plant a repaired or replacement part, provided such defective parts are returned to Seller at Buyer's expense.
>
> . . .
>
> **SELLER SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR ANY PAST OR PROSPECTIVE LOST PROFITS OF BUYER.**  The remedies set forth herein are exclusive, and the liability of Seller with respect to the SUPPLY or any act or omission in connection therewith, whether in a contract, tort, or under any warranty or otherwise, shall not, under any circumstances, exceed the actual price of the SUPPLY paid to Seller, and installation cost, if, and only if, such installation was performed by Seller, and less the value of any component parts of the SUPPLY which may be retained and utilized by Buyer.

(Strohl Aff. Ex. B. at 1 (emphasis in original).)  The terms and conditions define "supply" as "the scope of supply and the equipment furnished by Seller under the contract."  (*Id*.)

Reichhold responded by issuing a purchase order (Reichhold Purchase Order No. 4500034328 (the "Purchase Order").  (Strohl Aff. Ex. C.)  Dynamic Air accepted the Purchase Order by a letter dated November 18, 2003.  (Strohl Aff. Ex. D.)  In that letter, Dynamic Air reiterated that the Dynamic Air Terms and Conditions #062303 were in place.  (*Id*.) The parties do not dispute that these documents formed the basis of the contract between Dynamic Air and Reichhold, by which

Dynamic Air would design, manufacture, and deliver to Reichhold a pneumatic conveyance system and its associated process and safety instrumentation systems.

Reichhold asserts that it hired Dynamic Air because of Dynamic Air's expertise in the design and construction of pneumatic conveying systems, an expertise that both Reichhold and Superior Engineering, the consulting company Reichhold hired for the project, lacked.

Ultimately, Dynamic Air designed and manufactured the system. Reichhold asserts that the engineering services that Dynamic Air provided in designing the system were extensive. Reichhold maintains that Dynamic Air generated and delivered 150 pages of complex professional engineering drawings and spent nearly two thousand hours in preparing and revising these drawings. Reichhold contends that Dynamic Air alone was responsible for ensuring that its work complied with applicable engineering statutes, codes, rules, standards, and regulations. Dynamic Air did not install the system, but it did provide some technical support and assistance for installation of the system pursuant to a supplemental services contract. (Hartshorn Aff. at ¶¶ 33-34, 41-49; Exs. G and H.) Reichhold asserts that Dynamic Air made approximately 30 visits to the Morris Plant in Fall 2004 to assist with various aspects of the start-up.

It appears that after the system was installed, the parties' relationship soured. Dynamic Air asserts that at some point, Reichhold asked Dynamic Air to quit visiting the Morris Plant to make repairs on the system. Reichhold, on the other hand, contends that after a dispute developed over the amount Reichhold owed for start-up services, Dynamic Air abandoned the project. At any rate, on December 28, 2004, raw materials were being loaded into the silos that were part of the system and, according to Reichhold, a vacuum developed in the IPA and TPA silos, allowing the atmospheric

4

pressure within the two silos to drop below their structural tolerances.  As a result, the silos imploded,

crushing the silos to approximately 30% of their design capacity and rendering the system inoperable.

The start-up services related to the supplemental services contract are at issue in Dynamic Air's

collection action, which asserts that Reichhold failed to pay $80,081.74 in invoices for technical support

that Dynamic Air provided in connection with the start-up and operation of the system.  Reichhold has

moved for summary judgment on this claim, asserting that because Dynamic Air was not properly

licensed to perform professional engineering services for Reichhold, Dynamic Air forfeited the right to

receive or retain any amount under the contract at issue in this litigation.

In its counterclaim, Reichhold asserts that it suffered in excess of $1 million of incidental and

consequential damages as a result of the implosion that occurred on December 28, 2004.  Reichhold

contends that the malfunctioning of the conveying system caused the implosion.  Dynamic Air, on the

other hand, contends that Reichhold made modifications to the system that were contrary to Dynamic

Air's recommended parameters by modifying and disabling a vacuum-isolation valve and differential-

pressure switch in the system.  Dynamic Air contends that if these modifications had not been made, the

silos would not have imploded.  Reichhold denies having made any modifications that caused the

implosion.  As to its Motion for Partial Summary Judgment, Dynamic Air contends that the standard

terms and conditions govern the transaction and, as a result, Reichhold is barred from seeking any

consequential damages from Dynamic Air as a result of the implosion.  In addition, Dynamic Air

contends that Reichhold's direct damages are limited to no more than the amount that Reichhold paid

thus far for the conveying system.

## Discussion

### I.      Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

### II.     Analysis

Dynamic Air has moved for summary judgment on Reichhold's counterclaim.  Dynamic Air contends that the disclaimer in its standard terms and conditions expressly bars recovery of consequential damages.  Thus, Dynamic Air asserts that the Court should rule that Reichhold is

precluded from seeking consequential damages, including damages for any lost production, sales and profits, equipment rental, and site cleanup, in this suit.

Reichhold, on the other hand, contends that the Court should deny Dynamic Air's motion for four reasons. First, Reichhold asserts that Dynamic Air's failure to be licensed when providing professional engineering services renders the contract between the parties void. Second, Reichhold contends that the liability limitations in Dynamic Air's terms and conditions are overbroad and invalid. Third, Reichhold maintains that there is a question of fact as to which party's terms and conditions control the start-up phase of the project. Thus, Reichhold asserts that Dynamic Air is not entitled to summary judgment related to its conduct during the start-up phase of the project. Finally, Reichhold contends that because the contract involved Reichhold hiring Dynamic Air for the design of the system, the contract was not one for a sale of goods governed by the UCC. Reichhold's Motion for Summary Judgment asserts that the contract is void because of Dynamic Air's alleged failure to comply with Minnesota or Illinois professional engineering licensure statutes.

### A.      Application of the UCC

The parties appear to agree that this is a hybrid contract involving both the sale of goods and the provision of services. Dynamic Air contends that because the predominant purpose of the contract was the sale of goods, the contract is governed by the UCC. Reichhold, on the other hand, asserts that the predominant purpose of the contract was the provision of services because the essence of the contract was the engineering services provided by Dynamic Air.

In considering whether the UCC's statutory scheme applies to a hybrid contract involving the sale of goods and the provision of services, Minnesota courts apply the Eighth Circuit's "predominant

7

factor" test. *Valley Farmers' Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553, 556 (Minn. 1987)

(citing *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974)).  Under this test, if the predominant purpose

of the contract is for the sale of goods, then the UCC governs; if the predominant purpose is to provide

services, the UCC does not govern.  *McCarthy Well Co., Inc. v. St. Peter Creamery, Inc.*, 410

N.W.2d 312, 315 (Minn. 1987).

 Here, the Court finds that the predominant purpose of the contract was the sale of goods.  A

review of the documents exchanged between the parties demonstrates that the contract involved the sale

of pneumatic conveying equipment to Reichhold.  Certainly, the contract involved the incidental services

of Dynamic Air to appropriately fabricate the goods for Reichhold's purpose and site, but the focus of

the contract was the supply of goods, not the provision of engineering services.  In fact, the proposal

and invoices do not allocate the cost of engineering services to the cost of the project as a whole.  The

essence of the contract was for the sale of goods, and for this reason, Article 2 of the UCC applies to

the transaction.[1]

 **B.** **Terms and Conditions**

 Dynamic Air asserts that its standard terms and conditions apply to the parties' contract.

Reichhold, on the other hand, maintains that the terms and conditions are void because the terms and

conditions are overbroad and illegally attempt to disclaim liability for recklessness and willful and wanton

conduct.  The Court finds that the release is unambiguous and enforceable.

---

[1] This holding does not apply, however, to the supplemental services contract related to the
installation of the pneumatic conveying system.  As noted below, a question of fact remains as to
whether Dynamic Air's or Reichhold's terms and conditions apply to this contract, and thus whether

(Continued ...)

Dynamic Air's standard terms and conditions state that they "are part of the contract between Dynamic Air Inc. (Seller) and the Buyer named in the proposal submitted by Seller.  The formation of a contract between Seller and Buyer is expressly conditioned upon the inclusion of these Terms and Conditions 062303."  (Strohl Aff. Ex. B.)  Nothing in the documents exchanged between the parties—the documents that form the basis of this contract—conflicts with the unambiguous terms of these provisions.

Under Minnesota law, consequential damages may be excluded by contractual agreement unless such exclusion is unconscionable.  Minn. Stat. § 336.2-719(3) (2004).  Exculpatory releases that attempt to release claims for intentional, willful, or wanton acts will not be enforced.  *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982).  Here, two sophisticated commercial parties with relatively equal bargaining power entered into a contract that limited the liability of Dynamic Air.  Although the clause at issue does not specifically limit the release to claims of negligence, Reichhold has provided no support for its contention that the release *must* include such limiting language.  The relatively broad release language does not make the clause ambiguous, where a fair reading would allow the clause to comport with Minnesota law regarding exculpatory clauses.  Regardless, Reichhold does not assert that its claims are based on anything but negligence.[2]

---

(Continued …)
Reichhold can recover consequential damages related to the installation of the system.

[2]      The Court rejects Reichhold's assertions that it is contrary to both Minnesota and Illinois public policy to allow engineers to limit their own liability for negligence, recklessness, or willful or wanton conduct.  First, the Court has determined that the clause at issue does not attempt to limit liability for recklessness or willful or wanton conduct.  Second, the Court finds that Dynamic Air's manufacture of

(Continued ...)

### C.      Damages

Dynamic Air asserts that the Court should grant partial summary judgment to Dynamic Air on Reichhold's counterclaim based on the consequential damages provision in the parties' contract. Specifically, Dynamic Air contends that the parties' contract expressly bars the recovery of consequential damages and limits the amount of direct damages to the amount that Reichhold paid for the conveying system.  (Strohl Aff. Ex. B.)  In addition, Dynamic Air contends that the Court should rule that Reichhold voided the warranty in the contract by altering the conveying system.

The Court finds that, pursuant to the terms of the contract, Reichhold is barred from asserting any claim for the recovery of consequential damages related to the initial contract between the parties. In so holding, however, the Court notes that questions of fact remain as to whether any consequential damages that Reichhold suffered may have resulted from the initial contract for the sale of goods, or if they arose from the services provided pursuant to the supplemental services contract.  In addition, the Court finds that questions of fact exist as to whether Reichhold bypassed the system safeguards or if the equipment was defective.  In sum, the Court finds that Reichhold may not pursue consequential damages that stem from the initial contract between the parties.  However, Reichhold may pursue such damages that stem from the supplemental services contract.

### D.     Professional Engineering Licensure

Finally, both in response to Dynamic Air's Motion for Summary Judgment and in its own

---

(Continued …)
engineered goods does not provide an essential public service that should be exempted from exculpatory releases.  *See Schlobohm* at 925–26.

Motion for Summary Judgment, Reichhold contends that Dynamic Air's failure to be licensed renders the contract between the parties void. Reichhold asserts that pursuant to both Minnesota and Illinois law, a contract under which an unlicensed professional engineer provides professional engineering services is void. Similar to its arguments in regard to the application of the UCC, Reichhold spends much time setting forth Dynamic Air documents that point to the custom-designed nature of the conveying system at issue and the role that Reichhold played in designing that system.

The Court finds Reichhold's position unavailing. Reichhold has not pointed to any case that expansively applies the professional engineering statutes to a manufacturer of industrial products that renders services tangentially to the supply of such products. *Cf., Dick Weatherston's Associated Mechanical Services, Inc. v. Minnesota Mut. Life Ins. Co.,* 100 N.W.2d 819, 825 (1960) (professional engineering licensing statute did not apply to professional work performed by the plaintiff when such work was incidental to a contract and supervised by defendant's architects and engineers). As a result, the Court finds no basis to support Reichhold's argument that the parties' contract is void.

### Conclusion

Accordingly, **IT IS HEREBY ORDERED THAT:**

1.      Plaintiff Dynamic Air's Motion for Partial Summary Judgment (Doc. No. 29) is **GRANTED IN PART AND DENIED IN PART**, as follows:

      a.      Defendant Reichhold is barred from asserting any claim for the recovery of consequential damages related to the initial contract between the parties;

      b.      Defendant Reichhold may still pursue consequential damages based on the supplemental services contract between the parties;

11

     c.     To the extent that Plaintiff Dynamic Air seeks summary judgment on the

issue of Defendant Reichhold's alleged modification of the system, Plaintiff Dynamic

Air's motion is **DENIED**.

     2.     Defendant Reichhold's Motion for Summary Judgment (Doc. No. 22) is **DENIED**.


Dated:  February 16, 2006            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court